* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the parties and the subject matter of this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On or about August 24, 2003 the defendant employed more than three (3) employees, and it and its employees were bound by and subject to the provisions of the North Carolina Worker's Compensation Act, North Carolina General Statute Chapter 97.
4. On or about August 24, 2003 there existed between Antoinette Applewhite and Bridgestone-Firestone an employee/employer relationship.
5. On or about August 24, 2003, employer was self insured for Worker's Compensation claims with Gallagher Bassett Services as the administrator.
6. On or about August 24, 2003, plaintiff was employed by the employer at an average weekly wage entitling plaintiff to the maximum compensation rate for 2003 of $674.00.
7. On or about August 24, 2003 plaintiff alleges she sustained an occupational injury arising out of and in the course of her employment with defendant employer, said occupational disease resulting in an injury to her right leg, foot, ankle and hip and her right hand, wrist, arm and shoulder.
8. The following medical records are authentic as they are maintained in the course of activity of the physicians or institutions identified:
 (a) Frank A. Lescocky, DPM,; Greenville, North Carolina; 11 pages of records dated July 22, 2003 through December 10, 2003; (b) Gary Bachara, Ph.D., Wilson, North Carolina; 10 pages of records dated July 12, 2004 through October 11, 2004; (c) Mark Harris, M.D.; Physicians East; Greenville, North Carolina; 25 pages of records dated October 29, 2003 through March 17, 2004; (d) Patricia Hinson, M.D.; Physicians East; Farmville, North Carolina; 44 pages of records dated February 13, 2003 through July 8, 2004; (e) Robert Martin, M.D.; Carolina Regional Orthopaedics; Rocky Mount, North Carolina; 4 pages of records dated July 27, 2004 through August 25, 2004; (f) Jennifer M. Hart, M.D.; Rocky Mount Family Medical Centers; Rocky Mount, North Carolina; 7 pages of records dated July 14, 2004 through January 24, 2005; (g) John B. Winfield, M.D.; UNC Hospitals; Chapel Hill, North Carolina; 3 pages of records dated March 10, 2005.
 * * * * * * * * * * *
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing, plaintiff was 44 years old and had been employed with defendant from January 5, 1987, until her last day of work on August 23, 2003. Sometime in 1998, plaintiff became a "one-to-one" tire builder which job entailed working within a "triangle" consisting of a first-stage tire building station on plaintiff's left, a beading machine in the middle, and a second-stage tire building station on plaintiff's right.
2. Within the first-stage station, plaintiff would cut rubber body ply with a heated knife and piece together a second piece of body ply while depressing a series of pedals with her foot to advance the rubber pieces forward on a drum and to activate the "cycling" of the tire building machine to expand the drum and ply stitch the rubber. Plaintiff would then pick up the tire carcass, weighing approximately 10-15 pounds, and move it to the second-stage station where she would splice steel belts again using the foot pedals to advance the steel belts and to activate the machine allowing the spiral to run on and apply tread. Plaintiff was also called on to load and change out stock carts and occasionally to remove tread jams. Plaintiff built approximately 160-170 medium to large tires a day and pressed the foot pedals approximately 8 to 10 times per tire.
3. Plaintiff presented to her primary care physician, Dr. Patricia Hinson, on April 1, 2003, complaining of right leg and ankle pain.
4. Upon referral, plaintiff saw Dr. Frank Lescosky, a podiatrist, on July 22, 2003 and gave a history of gradual and progressive pain in her right foot over the preceding 7 to 8 years that she attributed to wearing steel-toed boots on a concrete floor. On August 12, 2003, Dr. Lescosky diagnosed plaintiff with anterior tibial tendonitis. Dr. Lescosky took plaintiff out of work on August 26, 2003.
5. On October 16, 2003, plaintiff presented to Dr. Lescosky with new complaints of right hand pain and swelling. At this time, plaintiff had been out of work for almost two months. Dr. Lescosky referred plaintiff to a rheumatologist to rule out any systemic disease. Plaintiff presented to Dr. Mark Harris, a rheumatologist, on October 29, 2003. Tests conducted were negative for any systemic disease and a bone scan was unremarkable. Dr. Harris diagnosed plaintiff with tendonitis in both the right ankle and wrist.
6. Plaintiff was referred for an orthopaedic evaluation with Dr. Gilbert Whitmer on January 29, 2004. Dr. Whitmer noted that plaintiff was diffusely tender everywhere he touched and diagnosed her with fibromyalgia.
7. On March 17, 2004, Dr. Randal White, a rheumatologist, also diagnosed plaintiff with fibromyalgia upon a finding that she had diffuse generalized pain.
8. Dr. Robert Martin, an orthopaedist, saw plaintiff on August 25, 2004 to determine whether surgery would benefit her with respect to her right foot and right upper extremity pain. He noted that the majority of plaintiff's symptoms were related to fibromyalgia. Dr. Martin did not believe further orthopaedic intervention was warranted.
9. Plaintiff underwent an independent medical evaluation by Dr. John Rice on March 18, 2005. Dr. Rice also diagnosed plaintiff with fibromyalgia.
10. Based upon the testimony of Dr. Lescosky and Dr. Harris, the greater weight of the competent evidence of record establishes that plaintiff suffered from right foot tendonitis during the period of time that she treated with Dr. Lescosky and Dr. Harris. This period of time encompasses June 2003, when plaintiff began treating with Dr. Lescosky, through January 2004, when plaintiff last saw Dr. Harris.
11. Based upon the testimony of Dr. Lescosky and Dr. Harris, the greater weight of the competent evidence of record further establishes that plaintiff's work as tire builder placed her at an increased risk for developing her right foot tendonitis as compared with the general public not equally exposed, and additionally made a significant contribution to the development of her right foot tendonitis. On August 12, 2003, plaintiff showed Dr. Lescosky how she used her right foot at work. She put her right foot out in front of her and just had to extend or plantar flex her foot repetitively with her knee and leg extended in front of her. This was in position such that after she went to push the pedal down, her anterior tibial tendon would be used to pick the foot up again for the next cycle. Based on this demonstration, Dr. Lescosky diagnosed plaintiff with anterior tibial tendonitis which was an occupational stress from using the pedals. On August 26, 2003, plaintiff's tendonitis included her extensor digitorum longus and the ankle joint capsule as well as the anterior tibial tendon. Dr. Lescosky took plaintiff out of work for six to eight weeks with immobilization for healing. Plaintiff was also given a fracture walker and anti-inflammatory medication.
12. Dr. Lescosky testified, and the Full Commission finds as fact, that plaintiff was unable to work due to her right foot tendonitis from August 26, 2003 through December 10, 2003, plaintiff's final visit to Dr. Lescosky. Dr. Lescosky was unable to offer an opinion regarding plaintiff's ability to work beyond this date.
13. Dr. Harris testified, and the Full Commission finds as fact, that plaintiff was unable to work, in part, due to her right foot tendonitis from October 29, 2003 through March 13, 2004. Dr. Lescosky was unable to offer an opinion regarding plaintiff's ability to work beyond this date.
14. The greater weight of the competent medical evidence of record establishes that plaintiff was unable to work in any employment due to her right foot tendonitis from August 26, 2003 through March 13, 2004.
15. With regard to the cause of plaintiff's right arm condition, Dr. Harris testified that if plaintiff's right arm complaints did not begin until approximately two months after she was taken out of work, then the symptoms would not be related to her work. Based upon Dr. Harris' testimony, the above finding that plaintiff had been out of work for almost two months when she first presented with hand complaints, and the absence of any other medical opinion linking plaintiff's right arm condition to her employment, the Full Commission finds that plaintiff's right arm condition treated by Dr. Harris is unrelated to her employment.
16. Plaintiff was first diagnosed with fibromyalgia on January 29, 2004. Plaintiff has failed to offer any evidence to establish, beyond mere speculation, that her fibromyalgia is causally related to her job with defendant or that her employment placed her at an increased risk for fibromyalgia.
17. Plaintiff testified and the Full Commission finds that she is currently out of work due to fibromyalgia in her hand. Plaintiff further testified and the Full Commission finds that her foot condition is not presently a serious problem.
18. Plaintiff received short term benefits through an employer-funded disability plan. Thereafter, plaintiff began receiving long term disability benefits through a plan funded by plaintiff.
 * * * * * * * * * * *
Based upon the foregoing findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant exposed her to a greater risk of developing her right foot tendonitis than members of the general public not equally exposed, and plaintiff's employment with defendant made a significant contribution to the development of her right foot tendonitis. Therefore, plaintiff's right foot tendonitis for which she received treatment from Dr. Lescosky and Dr. Harris is a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983).
2. Plaintiff has failed to establish that her right arm condition and fibromyalgia are occupational diseases within the meaning of N.C. Gen. Stat. § 97-53(13).
3. As a result of her right foot tendonitis, plaintiff became disabled and is entitled to temporary total disability compensation for the period of August 26, 2003 through March 13, 2004. N.C. Gen. Stat §97-29.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her right foot tendonitis as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. The Commission may approve a credit for the gross employer-funded disability plan payments received by plaintiff for any week she is entitled to total disability compensation under the N.C. Workers' Compensation Act. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, and the credit approved below for employer funded disability plan payments, defendant shall pay temporary total disability compensation to plaintiff at the rate of $674.00 per week for the period of August 26, 2003 through March 13, 2004. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's right foot tendonitis as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. A credit to defendant is approved in the amount of seventy-five percent (75%) of the gross employer-funded disability plan payments received by plaintiff for any week she is entitled to total disability compensation under the N.C. Workers' Compensation Act.
4. A reasonable attorney fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
5. Defendant shall pay the costs due the Commission.
This 22nd day of September 2006.
 S/___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER